■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v STACY

---

NORRIS, Also Known as JOHN REED, Appellant.—Appeal by defendant from a judgment of the County Court, Suffolk County, rendered February 15, 1979, convicting him of attempted burglary in the third degree, upon his plea of guilty, and imposing sentence. Judgment affirmed. Defendant, a 20-year-old male with a lengthy criminal history, was apprehended by the police at the store which he was accused of attempting to burglarize. It is undisputed that his *Miranda* rights were immediately read to him from the police standard issue rights card by Officer Albert Sinram of the Suffolk County Police. Officer Sinram testified at defendant's *Huntley* hearing that the following then took place: "A I asked him 'do you understand each of these rights I have explained to you?' Q Did the defendant respond? A Yes; he did. Q What did he say? A He said 'I know my rights better than you. I just got out of jail.' A Did you say anything then? A Yes. I said, 'Do you wish to contact a lawyer?' Q Did the defendant respond? A Yes; he did. Q What did he say? A He said 'I'll get a lawyer when I'm ready.' * * * Q Did you say anything at that time? A Yes. 'Having these rights in mind, do you wish to talk to me now, without a lawyer?' Q What did he say? A He didn't say anything." The hearing minutes indicate that at this point Officer Sinram moved away and the defendant was questioned by Officer Frank Stallone. According to Stallone defendant stated during this questioning that "[he went] in because he needed some money, because he just got out of jail." On appeal, defendant claims it was error for the Hearing Judge to hold his statement admissible, on the ground that his failure to respond to the question "do you wish to talk to me now, without a lawyer?," did not indicate a voluntary relinquishment of his rights to counsel and against self incrimination. In our view, defendant's statement, made to one of the arresting officers at the scene of the crime, was properly deemed admissible. Although a defendant may not waive his rights to counsel and against self incrimination merely by standing mute when asked if he wishes to talk to the police without an attorney present (see *Miranda v Arizona,* 384 US 436; *People v Schroder,* 71 AD2d 907), an express statement of waiver is not indispensible to a finding that defendant has, indeed, waived his aforesaid rights *(North Carolina v Butler,* 441 US 369, 373): "An express written or oral statement of waiver of the right to remain silent or of the right to counsel is usually strong proof of the validity of that waiver, *but is not inevitably either necessary or sufficient to establish waiver.* The question is not one of form, but rather whether the defendant in fact knowingly and voluntarily waived the rights delineated in the *Miranda* case. As was unequivocally said in *Miranda,* mere silence is not enough. That does not mean that the defendant's silence, coupled with an understanding of his rights and a course of conduct indicating waiver, may never support a conclusion that a defendant has waived his rights. The courts must presume that a defendant did not waive his rights; the prosecution's burden is great; but in at least some cases waiver can be clearly inferred from the actions and words of the person interrogated." (Emphasis supplied.) Thus, as the United States Supreme Court later observed in *Fare v Michael C.* (442 US 707, 724-725): "the determination whether statements obtained during custodial interrogation are admissible against the accused is to be made upon an inquiry into the totality of the circumstances surrounding the interrogation, to ascertain whether the accused in fact knowingly and voluntarily decided to forego his rights to remain silent and to have the assistance of counsel. *Miranda v. Arizona,* 384 U.S., at 475-477. This totality-of-the-circumstances approach is adequate to determine whether there has been a waiver even where interrogation of juveniles is involved. * * * The totality approach

permits—indeed, it mandates—inquiry into all the circumstances surrounding the interrogation. This includes evaluation of the [defendant's] age, experience, education, background, and intelligence, and into whether he has the capacity to understand the warnings given him, the nature of his Fifth Amendment rights, and the consequences of waiving those rights. See *North Carolina v. Butler, supra."* In the case at bar, we are dealing with an adult defendant who has had extensive experience and involvement with the criminal justice system, including charges of PINS, juvenile delinquency, and more recently, convictions for burglary, criminal trespass, escape and violations of parole. His statement as to his knowledge of his rights was unequivocal. In light of this knowledge and experience on the part of the defendant, this court concludes that the statement, "I'll get a lawyer when I'm ready", indicated that the defendant fully understood his right to an attorney and would request one if and when he desired. These expressions by the defendant coupled with his subsequent conduct unequivocally indicated a knowing and voluntary waiver of his *Miranda* rights (see *North Carolina v Butler, supra;* see, also, *People v Ruiz,* 34 AD2d 908). We have considered defendant's remaining contentions and find them to be without merit. Lazer, J. P., Gibbons, Gulotta and Cohalan, JJ., concur.